IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OTIS LANIER, *Plaintiff,* | § § § § | |
| VS. | § § | Civil Action No. 4:24-cv-03337 |
| AMGUARD INSURANCE COMPANY | § § | JURY DEMANDED |

**DEFENDANT AMGUARD INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND FOR SANCTIONS**

TO THE HONORABLE U.S. DISTRICT JUDGE BENNETT:

Defendant, AmGUARD Insurance Company, moves for summary judgment on all

Plaintiff's claims as well as its counterclaims, and would respectfully show the following:

## I.    Introduction

This is a first-party insurance case arising from a weather-related claim. This is not a close call.

Lanier seeks recovery for alleged Hurricane Nicholas damage despite undisputed evidence that:

- All invoices for property damage repairs predate the alleged loss;
- The property was sold before this lawsuit and was fully repaired at that time;
- The same $175,000 contents list was submitted for three separate claims; and
- Lanier admitted under oath that he cannot recall basic facts, repairs, or documentation.

The Policy excludes preexisting damage, requires cooperation, and mandates proof of loss. Lanier

breached these conditions and cannot establish coverage. Without coverage, his extra-contractual

claims fail under Texas law. AmGUARD also seeks sanctions under Texas law because Lanier

and his counsel filed and maintained this lawsuit despite evidence of its groundless nature and a

documented pattern of similar conduct.

## II.    Nature and Stage of the Proceeding

Lanier filed suit on August 1, 2024. [Doc. 1-4]. Lanier's First Amended Complaint was

filed on December 12, 2024. [[Doc. 21]. AmGUARD filed its Answer and Counterclaim on December 26, 2024. [Doc. 22] The Court entered a scheduling order with a trial setting of February 2, 2026. [Doc. 16]. Discovery is closed. AmGUARD's motion is timely under the Order.

### III.    Factual Background

### A.    The Policy

AmGUARD issued a Homeowners Policy to Lanier with Policy Number OTHO047145 for the policy period June 7, 2019 to June 7, 2020. It renewed as Policy Number OTHO102718 for the policy period June 7, 2020 to June 7, 2021. The policy then renewed as Policy Number OTHO220003 for the policy period June 7, 2021 to June 7, 2022 (the "Policy"). Ex. 1. Among other provisions, it contains Homeowners 3 – Special Form and Special Provisions – Texas.

### B.    Lanier's Insurance Claim History

Lanier, with Dick Law Firm ("DLF") as counsel, filed three claims with AmGUARD.

*2020 Claim.* Lanier's first claim was a hail claim for an alleged event on April 5, 2020. AmGUARD determined that there had not been a weather event on April 5 based on historic weather records. Result: Claim Denied.

*2021 Freeze Claim.* Lanier's second claim was a 2021 freeze claim. This matter went to appraisal in January 2022 on Lanier's request. The appraisal resulted in an award. After removing prior payments, the deductible, and items that were not covered, AmGUARD paid $66,398.25. But, Lanier filed suit anyway. Result: Summary judgment for AmGUARD.

### C.    The Claim Here – Lanier's 2021 Wind/Hail Claim

Lanier's third claim was for another alleged 2021 weather event. On March 17, 2022, Lanier reported a claim for damage allegedly caused by Hurricane Nicholas on September 14, 2021. Ex. 2. AmGUARD acknowledged the claim and inspected Lanier's property. *Id*. Envista

Forensics, LLC ("Envista") performed the initial inspection of the property. Ex. 3. Envista found damage to 17 roof shingles that were replaceable on a one-to-one basis, and that there was no hailstone damage or storm-created opening that resulted in interior water damage. *Id*.

Based on the unrepaired damages that were found, AmGUARD requested that Lanier provide proof of what repairs were completed due to the *2021 Freeze claim*, as well as other information AmGUARD required to complete the claims process. The information received from Lanier raised more questions. For example, all repair invoices presented by Lanier predated the September 14, 2021, date of loss.[1] Ex. 8.  Then, an identical 740-item damaged contents list was submitted for all three claims with a purported value of $115,758.38 as well as 7 appliances valued at $9,210.97. Exs. 4–6. AmGUARD requested Lanier's examination under oath ("EUO").

**D.    Lanier's Examination Under Oath ("EUO")**

During the EUO, Lanier testified that he could not remember, could not recall, or did not know more than 130 times over approximately 3 hours. Ex. 9. With respect to the duplicate content lists, Lanier testified that he could not remember if he had replaced any of the 740 items or the 7 appliances. Ex. 9 at 104:1-13; 108: 11-17. Lanier refused to confirm that all the items were the same in both losses. *Id*. Lanier could not remember replacing all the major appliances three times in two years. Ex. 9 at 103:9-14. Lanier had no explanation of why the same contents list was submitted on three different claims. The 2020 claim was the first time the contents list was submitted to AmGUARD as prepared by DLF. During his EUO, Lanier could not remember any details regarding the 2020 claim. Ex. 9 at 25:25 – 26:24.

All three contents list contain the same invoice to DLF from Ana Nguyen, Public Adjuster,

---

[1] Plaintiff admits the submitted O&M Construction Estimate for roof repairs totaling $17,866.62 was just a quote and no roofing work was ever completed by them. Ex. 15 at 74:18-75:6.

on Invoice 1153 with a due date of October 8, 2020. Compare Ex. 4, 5, 6. AmGUARD requested Nguyen's deposition repeatedly and it was never provided, on the basis that Plaintiff intended to de-designate Nguyen, which is one of the issues in AmGUARD's pending motion to strike. [Doc. 28]. Notably, Nguyen was struck in another DLF case. Civil Action 4:23-CV-2639; *Mario Robles v. AmGUARD Insurance Company;* In the United States District Court, Southern District of Texas, Houston Division. (J. Hanen).

**E.       The First Lawsuit – the 2021 Freeze Claim.**

In April 2023, after the payment of the appraisal award on the *2021 Freeze Claim*, Lanier, through DLF, filed suit against AmGUARD.[2] The Court, Judge Ellison presiding, granted summary judgment for AmGUARD. Ex. 10.

**F.       Lanier Sells the Property**

In February 2024, while the first lawsuit was pending and prior to the second, Lanier sold the property. The sellers' disclosures raised more questions because they state that (1) the Property was not in need of any repairs; Ex. 17 at 66[3] (2) an insurance claim for damage to the Property had never been filed; and (3) denied receiving insurance proceeds and not making repairs. *Id* at 68.[4]

**G.       Lanier's Testimony**

*Deposition in First Lawsuit.* AmGUARD deposed Lanier on April 2, 2024. Ex. 13. Lanier testified that he could not remember, could not recall, or did not know more than 150 times during

---

[2] Civil Action 4:24-CV-01991; *Otis Lanier v. AmGUARD Insurance Company;* In the United States District Court, Southern District of Texas, Houston Division.

[3] " Seller [was not] aware of any item, equipment, or system in or on the Property that is in need of repair, which has not been previously disclosed in this notice."

[4] "Seller [has not] received proceeds for a claim for damage to the Property (for example, an insurance claim or a settlement or a award in a legal proceeding) and not used the proceeds to make the repairs for which the claim was made."

approximately 5 hours of testimony. Lanier could not remember who prepared the contents list for him or when they did it. Ex 14 at 126:8-21. He could not remember when the items on the contents list were damaged. Ex 14 at 128:8-21.

As to the Property, Lanier had no memory of making repairs following the 2020 storm and had no documentation of any repairs. Ex. 13 at 121:2-7. Lanier admitted that he had probably spent around $11,000 on repairs. Ex. 13 at. 93:1-5. He had no recollection of any other amounts that he spent for repairs. Ex. 13 at 80:12-16. He did not keep records or receipts. Ex. 13 at 121: 2-7.

Lanier could not remember having three claims with AmGUARD. Ex. 13 at 38: 18-22. AmGUARD was able to confirm the details surrounding Lanier's sale of the Property in February 2024. Ex. 14 at 78:4-13, Ex.14.

*Deposition in Second Lawsuit.* AmGUARD deposed Lanier again, on July 10, 2025. Ex. 15. Lanier testified that he could not remember, could not recall, or did not know more than 150 times during approximately 3.5 hours of testimony. Lanier deferred to his attorney, stating he "hired an attorney." Ex. 15 at 5: 13-25. Lanier claimed he could not recall the date of loss, or if his alleged damage was caused by the Hurricane or a freeze. Ex. 15 at 5: 13-25; 11:5-12:13. Lanier could not recall what this second lawsuit was regarding and had no recollection of previously being deposed. Ex. 15 at 6:14-8:14. Lanier could not remember having three claims. Ex. 15 at 13:1-5; 17:14-18:9. Lanier could not remember who prepared the contents list for him or when they did it, but testified everything listed was damaged in the Hurricane. Ex 16 at 78:8-79:3; 80:17-22. Lanier could not name one appliance that was replaced. Ex. 15 at 27:19-28:2. When asked if he was aware that DLF submitted the same exact contents list in his *2021 Freeze Claim*, Lanier testified he, "wouldn't know." Ex. 15 at 81:1-12. Lanier repeatedly testified he provided documentation to DLF and denied withholding any documentation from AmGUARD or DLF. Ex. 15 at 28:4-17.

As to the Property at the time of the sale, Lanier did not know if all the repairs had been made. Ex. 15 at 84:22-25. Lanier had no memory of making any repairs following the 2021 Hurricane and he had no documentation of any repairs that he made. Ex. 15 at 63:22-64:11. Lanier admitted that he had spent around $11,000 on repairs but could not recall if the invoices were for freeze or Hurricane repairs despite predating the September 14, 2021 loss. Ex. 15 at 60:6-23; 62:8-63:12; 63:22-64:11; 67:7-23; 68:2-16. Of that amount, Lanier testified that a $4,500 invoice for interior painting was completed at or around the time the home was being sold. Ex. 15 at 75:18-24; 76:10-25. He had no recollection of any other amounts that he spent to repair the Property. Ex. 15 at 92:3-18. He admitted that he did not keep records of his repairs or receipts. Ex. 15 at 35:21-36:12. He further testified there was no preexisting damage to his home that predated the Hurricane. Ex. 15 at 94:9-11.

## IV. Statement of Issues

**Issue One: Coverage -** Lanier cannot recover when the undisputed evidence shows the claimed damages predate the alleged September 14, 2021, loss and are excluded under the Policy.

**Issue Two: Conditions Precedent -** Lanier's failure to cooperate and material misrepresentations bar coverage under conditions precedent.

**Issue Three: Extra-Contractual Claims -** Lanier's extra-contractual claims fail as a matter of law under *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018). In addition, under the *bona fide* dispute rule, AmGuard has shown that a genuine and reasonable dispute exists, which is insufficient to support bad faith.

**Issue Four:** AmGUARD's Counterclaims - Lanier's and DLF's actions warrant sanctions under Tex. Ins. Code §541.153, Tex. Civ. Prac. & Rem. Code §10.001, and DTPA §17.50(c) for filing and maintaining a groundless lawsuit.

**V.      Summary of the Argument**

AmGUARD seeks summary judgment on multiple grounds.

*No coverage exists.* The claimed damages predate the policy period, fall within exclusions for wear, tear, and lack of maintenance, and cannot be segregated from prior losses.

*Conditions Precedent Were Breached.* Lanier failed to cooperate, withheld documentation, and submitted false or misleading information.

*Extra-Contractual Claims Fail.* Under *Menchaca*, these claims cannot survive without coverage or an independent injury—neither exists here.

*Sanctions Are Warranted.* Lanier and his counsel filed this suit knowing the property was sold, the appraisal was impossible, and prior claims involved identical damages and contents lists.

**VI.     Standard of Review**

Because this is a diversity action, Texas substantive law applies. *Holt v. State Farm*, 627 F.3d 188, 191 (5th Cir. 2010).

**A.      Summary Judgment Standard**

The usual standard of review applies to this motion for judgment. Fed. R. Civ. Proc. 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000); *Levy v. Houston ISD,* 113 F.3d 528, 533 (5th Cir. 1997).

**B.      Insurance Contract Interpretation**

In Texas, insurance policies are read "using the ordinary rules of contract interpretation." *Tanner v. Nationwide*, 289 S.W.3d 828, 831 (Tex. 2009). Policies are given their "plain, ordinary meaning unless something else in the policy shows the parties intended a different, technical

meaning." *Id.* Courts "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's*, 327 S.W.3d 118, 126 (Tex. 2010). "[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994). "Unless the policy dictates otherwise, [courts] give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citing *Gilbert*, 327 S.W.3d at 126).

## C.    Insurance Coverage Burdens of Proof

The insured bears the burden of showing a loss is covered by the policy. *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.,* 197 F. 3d 720, 723 (5th Cir. 1999). Property insurance exists only for losses caused by a "covered cause of loss," and insurers owe no duty to insureds for losses not covered by the policy. *See Tellepsen Builders, L.P. v. Kendall/Heaton Assocs. Inc.*, 325 S.W.3d 692, 697 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (recognizing property insurance protects insureds from losses caused by "covered 'causes of loss'"); *see, e.g., Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 785-87 (Tex. 2008) (holding insurer not liable to insured because policy did not provide coverage). In the context of summary judgment, the insured must produce evidence that raises a question of material fact as to the existence of a covered claim. *Royal Surplus Lines Ins. Co. v. Brownsville ISD*, 404 F.Supp.2d 942, 949 (S.D. Tex. 2005).

## VII.    Summary Judgment Evidence

In support of this motion, pursuant to Rule 56, together with the pleadings and discovery on file, AmGUARD intends to rely on the following evidence:

1    The Policy                    2    Claim Acknowledgement Letter

| | | | |
|---|---|---|---|
| 3 | Envista Inspection Report | | November 10, 2023 |
| 4 | 2021 Wind/Hail Contents List | 13 | Lanier Deposition – April 2, 2024 |
| 5 | 2021 Freeze Contents List | 14 | Lanier's Seller's Disclosure |
| 6 | 2020 Wind/Hail Contents List | 15 | Lanier Deposition – July 10, 2025 |
| 7 | Lanier's First Appraisal Demand – July 12, 2022 | 16 | Taylor Declaration |
| 8 | Lanier's Invoices | 17 | DWQ VIVE Realty Records |
| 9 | Lanier EUO | 18 | Disclaimer Letter for 2020 Claim |
| 10 | Final Judgment Order in First Lawsuit | 19 | Correspondence – Plaintiff Agrees to Replead and Cure Petition Defects |
| 11 | Lanier's Second Appraisal Demand – February 12, 2023 | 20 | Sanctions Order on *Hudson v. Standard Casualty* |
| 12 | Lanier's Third Appraisal Demand – | 21 | *Shelby* Order of Dismissal |
| | | 22 | Affidavit of Costs |

## VIII.   Argument and Authorities

**Part One: Summary Judgment as to Lanier's Claims**

**A.     Lanier Cannot Recover on His Breach of Contract Claim Because the Policy Does Not Provide Coverage**

Lanier's threshold cause of action is for breach of contract. To prevail on that claim, Lanier bears the burden to establish a covered cause of loss. *Shree Rama, LLC v. Mt. Hawley Ins. Co.*, No. 23-40123, 2023 U.S. App. LEXIS 33122, at *3-4 (5th Cir. 2023) (per curiam) ("Insurers are liable only for losses covered by an insurance policy."). Lanier cannot meet his burden because the undisputed facts show that his alleged damages are not covered.

### 1.     The Damages Did Not Occur During the Policy Period

For coverage to attach, the Policy requires that the loss occur during the policy period. Ex. 1 at 39. AmGUARD's investigation determined the interior water damage predated the September 14, 2021 date of loss. Ex. 3 at 7. Randall Taylor, a construction and restoration expert, examined the damages and analyzed the history of the reported damage. Ex. 16. Taylor provides side-by-side comparisons of damage. Ex. 16 at 5-7. Having done so, he concluded that the damages reported in 2021 were the same damages from the 2021 and 2020 Claims in multiple areas of the

Property. *Id.* Accordingly, Taylor determined the interior water damage predated the 2021 loss.

Even if Lanier were to argue that the Property somehow suffered the same damage three times after being repaired twice, Lanier has no evidence that he made the repairs and could not testify to it. Without evidence that the damage occurred during the policy period, the Policy does not provide coverage.

### 2.  The Policy Exclusion for Not Repairing/Maintaining the Property

The Policy excludes wear, tear, rot, and faulty maintenance. Ex. 1 at 32–36. AmGUARD's investigation determined the interior water damage was inconsistent with storm-created openings. Ex. 3 at 7. Then, AmGUARD's engineer also ruled out a storm-created opening while appropriately considering other possible causes. Ex. 3 at 7.

Lanier has not and cannot address any of these exclusions. Lanier testified he had no memory of making any repairs following the 2021 Hurricane and he had no documentation of any repairs that he made. Ex. 15 at 63:22-64:11. The repair invoices provided pre-date the September 14, 2021, date of loss, meaning these damages cannot have resulted from the 2021 loss. Ex. 8. The Policy excludes these damages.

### 3.  At Best, The Doctrine of Concurrent Causation Applies And Lanier Cannot Meet Its Burden

Texas recognizes the doctrine of concurrent causation. *Certain Underwriters at Lloyd's v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018) (citations omitted). "Failure to provide evidence upon which a jury or court can allocate damages between those resulted from covered perils and those that did not is fatal to an insured party's claim." *Nat'l Union Fire Ins. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 659 (S.D. Tex. 2010).

Viewing this case in the light most favorable to Lanier, it is – at best – a case about covered

and noncovered damages, which means Lanier must segregate. Lanier has no experts or other individuals to offer testimony to do so. Lanier cannot recall the date of loss for his claim, or if his alleged damage was caused by the Hurricane or a freeze. Ex. 15 at 5: 13-25; 11:5-12:13.

### 4.    The Policy's Loss Settlement Provision Controls

Once repairs are complete, the Policy's Loss Settlement provision requires AmGUARD to evaluate the "necessary amount actually spent" to repair or replace damaged property in determining the final amount of the loss including any recoverable depreciation that may be due to the insured. Ex. 1, 35. This Policy provision, which embodies the windfall doctrine, protects AmGUARD from overpaying claims driven by something other than the actual costs of reasonable and necessary repairs. The failure to comply with the duty to provide proof of the actual costs of repairs is fatal to an insured's breach of contract action. *Bradshaw v. AmGUARD Insurance Co.*, 2025 U.S. Dist. LEXIS 154232, *1 at *13-*14 (S.D. Tex. August 11, 2025). (J. Rosenthal) (granting summary judgment where insured failed to provide actual costs of repairs)

Once AmGUARD determined that repairs were complete from the documents concerning the sale of the house, the Policy's Loss Settlement Provision controls. Lanier admits that he had probably spent around $11,000 on repairs to the home based on the invoices that he had provided. Ex. 13 at. 93:1-5. He had no recollection of any other amounts that he spent to repair the Property. Ex. 13 at 80:12-16. He admitted that he did not keep records of his repairs or receipts following the 2021 freeze claim. Ex. 13 at 121: 2-7.

### B.    Plaintiff materially breached conditions precedent to coverage, which resulted in material prejudice to AmGUARD.

Insurance policies may contain conditions precedent to the policy's enforcement such as requiring the insured to cooperate with the insurer. *See, e.g., Allstate v. Love*, No. 4:20-CV-00022,

2022 WL 5430123 at *3 (S. D. Texas June 14, 2022) (slip copy).  An insured's failure to satisfy a condition precedent excuses the insurer's performance or results in forfeiture of coverage when the insured's failure is material and prejudices the insurer.  *See, e.g., Martinez v. ACC Ins. Co.*, 343 S.W.3d 924, 930 (Tex. App.—Dallas 2011, no pet.); *Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.*, 218 S.W.3d 279, 285-86 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  A party's failure to comply with a condition precedent is necessarily material if it prejudices the other party by depriving it of the benefits of that condition. *See, e.g., Clarendon Nat'l Ins. Co. v. FFE Transp. Servs., Inc.*, 176 F. App'x 559, 562 (5th Cir. 2006) ("The Texas Supreme Court has held that prejudice is the loss of a valuable right or benefit.")

The Policy here contains conditions precedent that require Lanier's cooperation as well as requiring the insured to provide AmGUARD with specific documents when requested in its Duties After Loss. Ex. 1 at p. 37. The Policy also contains the Texas Special Provisions, including the Conditions related to insured's obligations under the Texas Insurance Code:

> **R. Concealment Or Fraud**
> *To the extent permitted by Texas Insurance Code sections 705.003 and 705.004 this policy is void and we will not provide coverage for the "insured" who, whether before or after a loss, has:*
> *1. Intentionally concealed or misrepresented any material fact or circumstance;*
> *2. Engaged in fraudulent conduct; or*
> *3. Made material false statements;*
> *relating to this insurance.*

Ex. 1 at p. 53. As shown above, these conditions precedent are valid and enforceable.

### 1.    Lanier breached the conditions precedent to coverage.

*Property Damage.* Lanier failed to disclose during the claim investigation or during the litigation any amount owed for dwelling repairs. Lanier admits having no evidence that he allegedly paid more than approximately $11,000 and cannot remember or document any additional

repairs. Moreover, Lanier submitted invoices that predate the date of loss. Ex. 8.

*Contents*. Lanier submitted the same contents list three times without any evidence that he replaced the contents. When asked about specific contents, Plaintiff admitted he could not remember if damage to his contents occurred from the freeze, the Hurricane, or both. Ex. 15 at 54:21-55:6; 55:14-24.

Moreover, Lanier cannot shield himself by sending things to counsel to "not know" or send AmGUARD to hunt them down. Texas law places the burden to comply with the Policy's conditions precedent on the Lanier and that burden is not so easily avoided. Submitting identical contents lists and invoices predating the loss violates the Policy and the Texas Insurance Code.

**2.      Plaintiff's breach is material and prejudicial to AmGUARD as to its evaluation of the contents claim presented by Lanier and the claim as to the areas damaged in 2020.**

The Policy provisions requiring the insured to cooperate, keep records, and provide information as requested embody the windfall doctrine. Ex. 1 at p. 37. Lanier is unable to provide the documentation, to explain why or how the same contents list was submitted three times, to remember repairs, replacing items, or which items were damaged. And these are not small personal items – these are appliances. By refusing to cooperate, Lanier deprived AmGUARD of the Policy's protections. As explained by the Southern District and the Texas Supreme Court discussed above, this is both material and prejudicial to AmGUARD.

**3.      Plaintiff's breach is material and prejudicial to AmGUARD as to its evaluation of the claim for personal property contents under the Policy.**

The Policy required Lanier to submit a detailed inventory if he wanted to be paid for personal property items with "all bills, receipts and related documents that justify the figures in the inventory." Ex. 1 at p. 37. Lanier asks for more than one hundred thousand dollars for things

like furniture, clothes, appliances, antique furniture, flat screen televisions, and computers. All of which were allegedly damaged three times. And Lanier cannot explain it. Without these documents and left with Lanier's less-than-reliable memory, AmGUARD is deprived of the Policy's benefits and is, therefore, prejudiced by Lanier's breach of conditions precedent.

## C.    Lanier's extra-contractual claims fail for multiple reasons.

Texas law is settled that there are only two paths an insured may take to establish the damages caused by an insurer's violation of the insurance code or the duty of good faith and fair dealing: either the insured establishes (1) "a right to receive benefits under the policy" or (2) "an injury independent of a right to benefits." *Argonaut Great Cent. Ins. Co. v. MLLCA, Inc.*, No. 02-19-00280-CV, 2021 Tex. App. LEXIS 3757, at *22-23 (Tex. App.—Fort Worth May 13, 2021, no pet.), citing *In re State Farm Mut. Auto. Ins. Co.*, Nos. 19-0791, 19-0792, 2021 Tex. LEXIS 222, 2021 WL 1045651, at *3 (Tex. Mar. 19, 2021) (orig. proceeding). Stated differently, "[a]n insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *Id.* (quoting *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018)). Liability under Chapter 541 and for common law bad faith are also reviewed using the same standards and with the same predicates for recovery. *See Giles*, 950 S.W.2d at 55-56.

### 1.  AmGUARD Has Not Breached Its Contract

As detailed above, the Policy does not provide coverage such that AmGUARD has not breached its contract. As a result, the Court should grant summary judgment in AmGUARD's favor on the extra-contractual claims. *See Menchaca*, 545 S.W.3d at 489 (insured must establish a loss of benefits or a statutory violation that results in an injury independent of loss of benefits); *Ortiz*, 589 S.W.3d at 131 (same); *Mitchell v. Praetorian Ins. Co.*, No. H-23-2049, 2024 U.S. Dist.

LEXIS 63627, at \*23 (S.D. Tex. 2024) (Rosenthal, J.) (granting summary judgment on identical allegations by Lanier's counsel).

### 2. No Independent Injury

Even if the Court concludes that Lanier may have raised an issue of fact on his breach of contract claim, he still cannot recover on his extra-contractual claims because he has no evidence of an "independent injury." In this case, Lanier does not allege an independent injury or quantify one. Lanier makes vague allegations that are nothing more than boilerplate pleadings contained in every complaint filed by Lanier's attorneys. *Mitchell v. Praetorian Ins. Co.*, No. H-23-2049, 2024 U.S. Dist. LEXIS 63627, at \*23 (S.D. Tex. 2024). As other Southern District Courts have granted summary judgment on identical allegations by Lanier's counsel, this Court should do the same and dismiss Lanier's extra-contractual claims with prejudice. *Id.; see also Bonner v. Allstate Vehicle*, No. 3:23-cv-158, 2024 U.S. Dist. LEXIS 33824, at \*8 (S.D. Tex. 2024); *Smiley Team II Inc. v. Gen. Star Ins. Co.*, No. 3:21-cv-103, 2022 U.S. Dist. LEXIS 239312, at \*16 (S.D. Tex. 2022).

### 3. At minimum, AmGUARD has shown that a genuine and reasonable dispute exists as to whether a covered cause of loss occurred.

Bad faith does not exist where evidence merely shows a bona fide coverage dispute exists as to the insurer's liability. *US Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). A dispute between an insurer and its insured as to whether a claim is covered constitutes a bona fide dispute. *See Pioneer Chlor Alkali Co. v. Royal Indem. Co.*, 879 S.W.2d 920, 939-40 (Tex. App.—Houston [14th Dist.] 1994, no writ). The bona fide dispute rule "is nothing more than a shorthand notation for the observation that the parties to an insurance contract will sometimes have a good faith disagreement about coverage." Moriel, 879 S.W.2d at 18 n. 8. *See also Higginbotham v. State Farm*, 103 F. 3d 456 (5th Cir. 1997) (finding

bona fide dispute as to coverage precludes plaintiff's bad faith claim). Further, "an insured claiming bad faith must prove that the insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact." *Id*.

AmGUARD had a reasonable basis for its decision: evidence of pre-existing damage; no evidence of a storm-created opening; lack of cooperation; and misrepresentations.

**D.      Lanier cannot support his mental anguish claim because he has offered no evidence – documentary or expert - to prove his claim meets the threshold.**

To survive summary judgment, a plaintiff must show direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption in the Plaintiff's daily routine." *Parkway Co. v. Woodruff*, 901 S.W.2d, 434, 444 (Tex. 1995). The evidence must demonstrate a high degree of mental pain and distress more than mere worry or anxiety, vexation, embarrassment, or anger. *Saenz v. Fidelity & Guar. Inc.*, 925 S.W.2d 607, 614 (Tex. 1996) (quoting *Woodruff,* 901 S.W.2d at 444.) Lanier has no evidence of a substantial disruption to daily routine.

As such, AmGuard is entitled to judgment on all of Lanier's causes of action.

**Part Two: AmGUARD's Counterclaims**

AmGUARD seeks a declaration that:

- No Additional Benefits Owed: The claimed loss is not covered under the Policy, and AmGUARD owes no additional policy benefits.

- Breach of Conditions Precedent: Plaintiff materially breached the Policy's conditions precedent, including the duty to cooperate and the obligation to provide truthful information.

- False or Groundless Submissions: Plaintiff submitted information in support of the claim that was false, misleading, or wholly groundless.

**A.      AmGUARD's Substantive Claim for Relief**

As set out above, the Policy does not provide coverage for the claimed loss. Lanier has

breached the Policy's condition precedent. As such, AmGUARD requests that the Court grant its request for a declaratory judgment as to coverage.

**B.    Lanier and DLF's Abuse of the Litigation Process Warrants Sanctions Under the Texas Law**

Texas law authorizes sanctions when a party files or maintains a groundless action in bad faith or for purposes of harassment. See Tex. Ins. Code §541.153; Tex. Civ. Prac. & Rem. Code §10.001; Tex. Bus. & Com. Code §17.50(c).

Lanier and Lanier's counsel knew or should have known these facts based on its representation of Lanier in multiple prior claims and lawsuits involving the same property and similar allegations. Despite this knowledge, counsel pursued this litigation.

**1.   The Dick Law Firm Knew the Suit Was Baseless When It Was Filed**

Lanier's First Amended Complaint [Doc. 21] is filled with misrepresentations and half-truths, which DLF knew or should have been aware of because it represented him across all three claims. Ex. 19. Without trying to identify them all, AmGUARD highlights the following:

| Example 1 | *Otis Lanier is the owner of real property... this is his home and primary residence.* Doc. 21 at ¶7. |
|---|---|
| Fact: | Lanier is not the owner. He sold the property. |
| Example 2 | *Mr. Lanier promptly filed a claim with AmGUARD Insurance Company (Claim No. GHAG20050126) on or about May 12, 2020. Shortly thereafter, North American Risk Services, Inc. (NARS), the third-party administrator for AmGUARD, sent an adjuster to inspect the Home and assess the damages caused by the storm.* Doc. 21 at ¶11. |
| Fact: | The Claim No. is OTHO220003-001-001-001 and the claim was reported on March 17, 2022. NARS was not involved with this claim. |
| Example 3 | *his home remains in a state of disrepair.* Doc. 21 at ¶11. |
| Fact: | The home had been repaired and sold at the time of this pleading. |
| Example 4 | *The Claim is currently still in the appraisal process.* Doc. 21 at ¶17. |
| Fact: | Because the home had been repaired and sold, the Policy's Loss Settlement Provision controlled, not appraisal. |

### 2. Lanier Knew or Should Have Known

Lanier is not blameless. He actively participated in the conduct at issue. During both the claim investigation and litigation, Lanier failed to disclose any additional amounts spent on repairs. He admitted he had no evidence of paying more than approximately $11,000 and could not recall or document any other repairs. More troubling are the documents Lanier submitted. He produced invoices that predate the alleged loss (Ex. 8) and submitted the same contents list three times without proof that any items were replaced. Lanier cannot avoid responsibility by deferring to counsel or claiming ignorance. Texas law places the burden of compliance with policy obligations and litigation duties squarely on the party bringing suit.

### 3. The Dick Law Firm Has Been Warned By Other Courts

These actions become even more problematic in light of other similar cases filed by the DLF. For example, in *Hudson v. Standard Casualty Company*, an insured reported a claim for damage caused by burst pipes during Winter Storm Uri. Although the insured testified that she had completed repairs for $2,350, the DLF nevertheless attempted to claim more than $40,000 in repair costs. Ex. 20. The insured testified that she not only disagreed with that estimate, but that DLF's other theories regarding the case lacked any basis and that she completely disagreed with the factual allegations in her Petition. *Id.* As a result of the completely baseless action, the Harris County judge awarded sanctions. In Civil Action No. 4:24-cv-01128, *John Shelby v. AmGuard Insurance Company*, Judge Eskridge granted an Order of Dismissal following a Show Cause Order which expressly detailed an apparent "pattern of abusive litigation tactics by Eric Dick and his law firm." Ex 22 at 4. The Order also included numerous case citations where DLF was sanctioned for the similar  pattern and practice of improper conduct. *Id.*

**4. The Dick Law Firm Has Not Change Its Ways**

Just as in *Hudson* and thousands of other cases, the DLF named the same experts who have almost certainly not inspected the property, not reviewed the file, or very clearly not taken into consideration that the home has been repaired and sold.  Rather than waste any more of the Court's time or additional moneys preparing for trial, AmGUARD is simply asking that the Court end this case with an appropriate sanction. The facts pled and proven by AmGUARD show that Plaintiff's claims are not only baseless, but that they were brought in bad faith, or at the very least, simply as a form of harassment. Accordingly, these actions warrant the sanctions prescribed by the Texas Insurance Code and DTPA.

Based on the facts and analysis described above, AmGUARD requests that the Court grant judgment in AmGUARD's favor on its counterclaims and also enter an order awarding sanctions under Tex. Ins. Code §541.153; Tex. Civ. Prac. & Rem. Code §10.001; and §17.50(c) of the DTPA.

Defendant seeks sanctions in the amount of $48,141.40, which represents the amount of reasonable and necessary attorneys' fees incurred by Defendant to date in defending this frivolous action. [*See* **Ex. 22** - Affidavit of Costs].

## IX.    Conclusion

The undisputed facts show that Plaintiff cannot establish coverage, has breached conditions precedent, and lacks any evidence to support extra-contractual claims. This lawsuit is groundless and warrants sanctions. AmGUARD respectfully requests that the Court:

1. Grant summary judgment on all claims asserted by Plaintiff;
2. Grant summary judgment on AmGUARD's counterclaims;
3. Award sanctions of $48,141.40 under Tex. Ins. Code §541.153, Tex. Civ. Prac. & Rem. Code §10.001, and DTPA §17.50(c); and
4. Grant all other relief to which AmGUARD is entitled.

Respectfully submitted,

By: */s/ Jamie P. Cooper*
        Christopher W. Martin
        State Bar No. 13057620
        Federal I.D. No. 13515
        MARTIN, DISIERE, JEFFERSON & WISDOM, LLP
        808 Travis, Suite 1100
        Houston, Texas 77002
        Telephone: (713) 632-1700
        Facsimile: (713) 222-0101
        Email: martin@mdjwlaw.com
**ATTORNEY IN CHARGE FOR DEFENDANT
AMGUARD INSURANCE COMPANY**

**OF COUNSEL:**
Jamie P. Cooper
Texas Bar No. 24027603
Federal I.D. 34510
E-Mail:  cooper@mdjwlaw.com
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
11467 Huebner Road, Suite 200
San Antonio, Texas 78230
Telephone: (210) 298-2480
Facsimile: (713) 222-0101

## CERTIFICATE OF CONFERENCE

AmGuard's counsel has repeatedly attempted to address the issues raised in this motion prior to filing. Counsel began efforts to resolve these issues in March of 2025. Repeated efforts to reach out and discuss scheduling, timing, discovery responses, and other issues were never resolved. After the new expert designation was received, counsel reached out again on May 7, 2025, by telephone and email to address the problems. On October 2, 2025, counsel again tried to address the issues and advised Plaintiff of its intent to file this motion. Plaintiff's counsel rebuffed all these efforts.

                    */s/ Jamie P. Cooper*
                    Jamie P. Cooper

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure on October 3, 2025.

Eric B. Dick
Dick Law Firm, PLLC
3701 Brookwoods Drive

Houston, Texas 77092

/s/ Jamie P. Cooper
Jamie P. Cooper